## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
## CIVIL DIVISION

Angela Collins and Nicole Collins
    Plaintiffs,

                           Case No.:

    vs.

                           Division:

GEICO General Insurance Company
    Defendant.

_____/

### UNDERINSURED AUTO COMPLAINT

COMES NOW, the Plaintiffs Angela Collins and Nicole Collins, by and through undersigned counsel, and sues the Defendant GEICO General Insurance Company, and as grounds therefore would allege as follows:

1.     This is an action for damages in excess of fifteen thousand ($15,000.00) dollars and is otherwise within the subject matter jurisdiction of the Circuit Court.

2.     On or about June 3, 2011, an underinsured driver owned and operated a motor vehicle at or near the intersection of Woodland Waters Boulevard near Nightengale Road in Hillsborough County, Florida.

3.     At all times material hereto, Defendant GEICO General Insurance Company was a corporation duly licensed to transact insurance in the State of Florida and maintained an office for the transaction of its customary business in Hernando County, Florida.

4.     At that time and place, the underinsured driver negligently operated or maintained their motor vehicle so that it collided with Plaintiff's motor vehicle.

5.     As a result, Plaintiffs, Angela Collins and Nicole Collins, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of

earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

6.     On the date of the crash, Plaintiffs were insured under a policy of insurance issued by Defendant GEICO General Insurance Company bearing policy number 4111-11-82-06. The policy provided uninsured and under insured motorist benefits to Plaintiffs, and was in full force and effect on the date of the crash. A Copy of the policy is attached hereto as Exhibit "A". GEICO General Insurance Company has the original policy.

7.     On the date of the crash, the at fault driver was an under insured motorist as defined by Plaintiffs' policy; accordingly, GEICO General Insurance Company is liable for benefits under the policy.

8.     All conditions precedent to bringing this action have been met or waived.

WHEREFORE, the Plaintiffs, Angela Collins and Nicole Collins, demand judgment against the Defendant GEICO General Insurance Company.

Plaintiff further demands a trial by jury of all issues so triable.

### COUNT II—VIOLATION OF FLORIDA STATUTE § 624.155

The Plaintiffs, Angela Collins and Nicole Collins sue the Defendant GEICO General Insurance Company, and adopts all of the allegations contained in paragraphs one through eight as though more fully set forth herein and would further state:

9.     This claim will ripen upon the determination by the Court or by confession of judgment by GEICO General Insurance Company that Plaintiff is entitled to the limit of uninsured motorists benefits under the policy.

10.    Plaintiffs timely reported the claim to Defendant and otherwise complies with all of the obligations under the contract.

11.	On December 31, 2015, Angela Collins and Nicole Collins, Plaintiffs, each filed a Civil Remedy Notice of Insurer Violations ("CRN") with the Florida Department of Insurance and served a copy of the CRN upon GEICO General Insurance Company. A copy of the CRN is attached hereto as Exhibit "B and C."

12.	As a result of the injuries caused by the negligence of the uninsured motorist and the relationship between the parties under the Policy, GEICO General Insurance Company owed a duty to the Plaintiffs to attempt in good faith to settle Plaintiff's uninsured motorists claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for Plaintiff's interests. GEICO General Insurance Company further owed to Plaintiffs a duty to refrain from engaging in unfair claim settlement practices.

13.	GEICO General Insurance Company breached its duties to Plaintiffs, in violation of section 625.155, Florida Statutes, by:

- a.	Failing to attempt, in good faith, to settle Plaintiff's uninsured motorist claim when, under all of the circumstances, it could have and should have done so, had it acted fairly and honestly and with due regard for Plaintiff's interests, who was an insured, in violation of section 624.155(1)(b)(1), Florida Statutes;

- b.	Failing to properly train adjusters and claims personnel;

- c.	Placing its own financial interests before that of Plaintiffs;

- d.	Engaging in unfair claims settlement practices in violation of section 626.9541(1)(i)3. a, c, d, f and g, Florida Statutes. Specifically,

  - i.	Failed to adopt and implement standards for the proper investigation of claims, including coverage;

ii.   Failed to acknowledge and act promptly upon communications with respect to Plaintiff's uninsured motorist claim, including its failure to properly respond to Plaintiff's multiple written requests for coverage information and demands for payment of all uninsured motorist benefits under the Policy;

iii.  Denied Plaintiff's uninsured motorist claim without conducting a reasonable investigation based on the available information, even disregarding Plaintiff's repeated offers to assist in its investigation;

iv.   Failed to provide a reasonable written explanation of the basis in the insurance policy, in relation to the facts or applicable law, for its lack of any offer of settlement and eventual decision to deny coverage; and

v.    Failed to promptly notify Plaintiffs of any additional information necessary for the processing of the uninsured motorist claim, including what information GEICO General Insurance Company's employees required to properly assess and determine whether Plaintiff was afforded coverage pursuant to GEICO General Insurance Company's policies and procedures.

14.   The acts complained of herein constituted Defendant's general business practices in that they (a) were expressions of, and in compliance with, standard company practices and procedures, (b) are said by Defendant to be in conformity with what it contends are standard and good faith claims practices, and consequently or incidentally, (c) occur with such frequency as to indicate general business practices.

15.   As a direct and proximate result of Defendant's actions and/or inactions as set forth above, Plaintiffs has been damaged.

16. GEICO General Insurance Company failed to cure its bad faith and more than sixty (60) days has passed since the filing and service date of the CRN.

As a result of GEICO General Insurance Company's failure to act in good faith and statutory violations alleged above, Plaintiffs is entitled to recover the total amount of their damages pursuant to section 627.727(10), Florida Statutes, including all damages suffered as a result of the crash and all damages caused by GEICO General Insurance Company's failure to act in good faith and statutory violations alleged above.

17. GEICO General Insurance Company's violation of section 624.155, Florida Statutes has caused damages to Plaintiffs of interest on unpaid benefits, pre-judgment interest accrued since the date of GEICO General Insurance Company's violation; attorney's fees incurred by Plaintiffs in the prosecution of this claim for uninsured motorist benefits and pre-judgment interest thereon; costs incurred in the prosecution of Plaintiff's claim for uninsured motorist benefits, including expert witness fees; costs incurred in the prosecution of Plaintiff's claim for violation of section 624.155, Florida Statutes; post-judgment interest.

18. As a further direct and proximate result of GEICO General Insurance Company's failure to act in good faith and statutory violations alleged above, Plaintiff s had to retain the services of the undersigned attorneys and contracted with them for the payment of their attorney's fees to bring this action and recover the excess damages owed by GEICO General Insurance Company. By operation of law, including section 627.428, Florida Statutes, GEICO General Insurance Company, will be obligated to pay those fees upon the successful conclusion of Plaintiff's claim.

19. All conditions precedent to Plaintiff's rights to bring this action has occurred or have been satisfied.

WHEREFORE Plaintiffs demands judgment against Defendant, GEICO General Insurance Company, for the total damages suffered by Plaintiffs, pre and post-judgment interest, attorneys' fees pursuant to sections 624.155, 627.727(10) and 627.428, Florida Statutes, costs, and any other relief this Court deems necessary and proper.

Further Plaintiffs demands a trial by jury on all issues so triable.

MATTLAW®

*Matt Powell*

Matthew D. Powell, Esq. FBN 710148
Service E-mail: Pleadings@MattLaw.com
and PowellAndEspat@gmail.com
Attorney for Angela Collins
304 S. Plant Avenue
Tampa, Florida 33606
(813) 222-2222

§-P5

Exhibit A

# AFFIDAVIT

STATE OF FLORIDA
POLK COUNTY: ss

I, John Walsh, Claims Manager of GEICO General, Incorporated under the laws of the State of Maryland, do hereby certify that policy number 4111118206, issued to Nicholas Collins and Angela P Collins effective 4/28/2011 to 10/28/2011, afforded the following coverage:

*Coverage for losses sustained by anyone other than an insured is limited to:*

| | |
|---|---|
| Bodily Injury: | $250,000 per person/$500,000 per occurrence |
| Property Damage (includes loss of use): | $500,000 |

*Coverage for losses sustained by an insured:*

| | |
|---|---|
| Uninsured Motorist: | Non-Stacking $100,000 per person/$300,000 per occurrence |
| Personal Injury Protection: | No Deductible, applies to Named Insured and Dependent Relatives |
| Additional PIP: | Not Applicable |
| Medical Payments: | $10,000, applies to Named Insured and Dependent Relatives only |
| Collision: | $500 Deductible |
| Comprehensive: | $500 Deductible |
| Rental Reimbursement: | $900 Max Per Accident |
| ERS: | Available |
| MBI: | Available |

on the following vehicle: 2008 M BENZ, VIN WDDGF54X08F053779, during the above policy period.

Number of listed vehicles: Not Applicable

Additional Covered Drivers: None Known At This Time

Policy and coverage defenses known are: None Known At This Time

Additional insured(s) under Section I, Liability Coverage: Not Applicable

Additional Insurance Coverage: None Known At This Time

_____
CLAIMS MANAGER

Subscribed and sworn to me this ___ day of NOV 03 2011 _____
NOTARY PUBLIC

Adj. Code: F893
Claim Number: 0334251010101042 - 11/1/2011
U92C80 - ARamos

SARAH BENNETT
MY COMMISSION #EE045490
EXPIRES: NOV 28, 2014
Bonded through 1st State Insurance

# A F F I D A V I T

I, K. Doster, Claims Coverage Underwriter of Geico General Insurance Company a corporation organized and existing under the laws of the state of Maryland, do hereby certify that the attached Policy Declaration sheet, amendments, endorsements, and policy contract are specific to policy number 4111-11-82-06 in the name of NICHOLAS COLLINS AND ANGELA P COLLINS, and in effect on 06/03/11, the date of loss.

_____
K. Doster
Claims Coverage Underwriter

In the State of Florida, County of Polk, the foregoing instrument was subscribed and sworn before me this 1st day of November, 2011, by K. Doster who is personally known to me or has produced a driver's license for identification.

_____
Notary Public



VERONICA MCGILL
MY COMMISSION # DD 990213
EXPIRES: April 8, 2014
Bonded Thru Notary Public Underwriters



**GEICO**
geico.com

Tel: 1-800-841-3000

**GEICO GENERAL INSURANCE COMPANY**
P.O. BOX 9105
Macon, GA 31208-9105

Date Issued: March 15, 2011

NICHOLAS COLLINS AND ANGELA P
COLLINS
10135 SHORTLEAF CT
WEEKI WACHEE FL 34613-6525

Email Address: troubled4@aol.com

# Declarations Page

This is a description of your coverage.
Please retain for your records.

## Policy Number: 4111-11-82-06
## Coverage Period:
04-28-11 through 10-28-11
12:01 a.m. local time at the address of the named insured.

| Insured | Additional Drivers |
|---|---|
| Nicholas Collins | Nicole Collins |
| Angela Collins | Ryan Collins |

| Vehicles | | VIN | Vehicle Location | Finance Company/ Lienholder |
|---|---|---|---|---|
| 1 2007 Chev | Malibu | 1G1ZU57N27F303307 | Weeki Wachee FL 34613 | |
| 2 2008 M Benz | C300 | WDDGF54X08F053779 | Weeki Wachee FL 34613 | |
| 3 2008 Chev | Malibu | 1G1ZK57718F228950 | Weeki Wachee FL 34613 | |
| 4 2008 Chev | Tahoe | 1GNFC130X8R272475 | Weeki Wachee FL 34613 | Gmac |

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 | Vehicle 3 | Vehicle 4 |
|---|---|---|---|---|---|
| Bodily Injury Liability | | | | | |
| Each Person/Each Occurrence | $250,000/$500,000 | $352.50 | $120.60 | $166.60 | $139.80 |
| Property Damage Liability | $500,000 | $96.60 | $35.20 | $49.70 | $47.60 |
| Medical Payments | $10,000 | $91.70 | $23.60 | $38.00 | $28.30 |
| Personal Injury Protection | Non-Ded/Insd&Rel | $150.80 | $62.30 | $98.80 | $72.60 |
| Uninsured Motorist/Nonstacked | | | | | |
| Each Person/Each Occurrence | $100,000/$300,000 | $113.10 | $113.10 | $113.10 | $113.10 |
| Comprehensive | $500 Ded | $54.10 | $47.30 | $53.90 | $30.50 |
| Collision | $500 Ded | $189.00 | $88.90 | $105.40 | $66.00 |
| Emergency Road Service | Full | $9.40 | $6.60 | $6.60 | $6.60 |

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 | Vehicle 3 | Vehicle 4 |
|---|---|---|---|---|---|
| Rental Reimbursement | $30 Per Day | $9.10 | $9.10 | $9.10 | $9.10 |
|  | $900 Max | - | - | - | - |
| Mechanical Breakdown | $250 Ded | $37.40 | $70.00 | $34.70 | $51.40 |
| **Six Month Premium Per Vehicle** |  | **$1,103.70** | **$576.70** | **$675.90** | **$565.00** |
| **Total Six Month Premium** |  |  |  |  | **$2,921.30** |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

## Discounts

| | |
|---|---|
| The total value of your discounts is | **$1,546.80** |
| Seatbelt (All Vehicles) | $91.90 |
| Multi-Car (All Vehicles) | $565.90 |
| Good Student (Veh 1) | $108.10 |
| Anti-Lock Brakes (All Vehicles) | $98.00 |
| Anti-Theft Device (All Vehicles) | $18.80 |
| 5 Year Good Driving (All Vehicles) | $315.60 |
| Passive Restraint/Air Bag (All Vehicles) | $347.50 |

**Contract Type:** A30FL

**Contract Amendments:** ALL VEHICLES - A200FL A30FL A54FL

**Unit Endorsements:** A115 (VEH 1,2,3,4); A180H (VEH 1,2,3,4); A239 (VEH 1,2,3,4); A431 (VEH 1,2,3,4); UE316 (VEH 4)

Countersigned by Authorized Representative



---

### Important Policy Information

-If you have any questions about this policy, about the insurance services we offer, or if you need assistance resolving a complaint please contact GEICO at 1-800-841-3000. We can assist you with your personal insurance needs.

-Please review the front and/or back of this page for your coverage and discount information.

-Active Duty, Guard, Reserve or Retired Military: Call 1-800-MILITARY to see if you qualify for the Military Discount.

-As your vehicle ages, the Multi-Risk Coverage you carry becomes nearly impossible to replace. Renew your policy today and enjoy continuous coverage against costly mechanical breakdowns.

-Reminder – Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA and NORTH CAROLINA. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

**GEICO**

ONE GEICO PLAZA
Washington, D. C. 20076-0001
Telephone: 1-800-841-3000

# Florida
# Family
# Automobile
# Insurance
# Policy

- Government Employees Insurance Company
- GEICO Casualty Company
- GEICO General Insurance Company
- GEICO Indemnity Company

SPECIMEN

A-30FL (2-98)

# YOUR POLICY INDEX

Page

**SECTION I - Liability Coverages**
**Your Protection Against Claims From Others**

Definitions..................................................3
Losses We Will Pay For You..............................3
Additional Payments We Will Make Under
  The Liability Coverages...............................4
    Legal Expenses And Court Costs
    Bail And Appeal Bonds
    First Aid Expenses
Exclusions: When Section I Does Not Apply.............4
Persons Insured: Who Is Covered .....................4
Financial Responsibility Laws .......................5
Limits Of Liability .................................5
Other Insurance .....................................5
Conditions...........................................5
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Subrogation

**SECTION II - Personal Injury Protection Coverage**

Personal Injury Protection (Part I)......................6
Payments We Will Make .................................6
Exclusions ...........................................6
Limits Of Liability; Application Of Deductible;
  Other Insurance ....................................7
Definitions...........................................7
Policy Period; Territory..............................8
Conditions............................................8
    Notice
    Action Against The Company
    Proof Of Claim; Medical Reports and
      Examinations; Payment of Claim Withheld
    Reimbursement And Subrogation
    Special Provisions For Rented Or Leased Vehicles
    Arbitration
Modification Of Policy Coverages (Part II)...............8
Provisional Premium (Part III)........................9

**SECTION III - Physical Damage Coverages**
**Your Protection For Loss Of Or Damage To Your Car**

Definitions...........................................9
Losses We Will Pay ..................................10
    Comprehensive(Excluding Collision) ..............10
    Collision .......................................10
Additional Payments We Will Make Under The
  Physical Damage Coverages..........................10
Car Rental If Your Car Is Stolen ....................10

Page

Exclusions: When The Physical Damage
  Coverages Do Not Apply.............................10
Limit Of Liability...................................11
Other Insurance .....................................11
Conditions...........................................11
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To Bailee
    Subrogation
**SECTION IV - Uninsured Motorists Coverage**
**Your Protection For Injuries Caused By**
**Uninsured And Hit-And-Run Motorists**

Definitions .........................................12
Losses We Pay .......................................13
Exclusions: When Section IV Does Not Apply      13
Limits Of Liability .................................13
Other Insurance .....................................13
Disputes Between Us And An Insured ..................13
Trust Agreement......................................14
Conditions...........................................14
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Proof Of Claim - Medical Reports
    Payment Of Loss
**SECTION V - General Conditions**
**The Following Apply To All Coverages In This Policy**

Territory - Policy Period ...........................15
Premium..............................................15
Changes..............................................15
Assignment...........................................15
Cancellation By The Insured .........................15
Cancellation By Us...................................15
Cancellation By Us Is Limited .......................16
Renewal..............................................16
Mediation Of Claims..................................16
Other Insurance......................................16
Action Against Us....................................16
Dividend Provision...................................16
Declarations.........................................16
Fraud And Misrepresentation..........................16
Examination Under Oath...............................17
Terms Of Policy Conformed To Statutes ...............17
**SECTION VI - Amendments And Endorsements**

Special Endorsement
United States Government Employees ..................17

Whenever "he," "his," "him," or "himself" appears in this policy, you may read "she," "her," "hers," or "herself."

## AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with *you*, the policyholder. Relying on the information you have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:

### SECTION I - LIABILITY COVERAGES

#### Bodily Injury Liability And Property Damage Liability
#### Your Protection Against Claims From Others

#### DEFINITIONS

The words italicized in Section I of this policy are defined below.

1. *"Auto business"* means the business of selling, repairing, servicing, storing, transporting or parking of autos.

2. *"Bodily injury"* means bodily injury to a person, including resulting sickness, disease or death.

3. *"Farm auto"* means a truck type vehicle with a load capacity of 2,000 pounds or less, not used for commercial purposes other than farming.

4. *"Insured"* means a person or organization described under PERSONS INSURED.

5. *"Non-owned auto"* means a *private passenger, farm* or *utility auto* or *trailer* not owned by or furnished for the regular use of either *you* or a *relative*, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

6. *"Owned auto"* means:

    (a) a vehicle described in this policy for which a premium charge is shown for these coverages;

    (b) a *trailer* owned by *you*;

    (c) a *private passenger, farm* or *utility auto*, ownership of which *you* acquire during the policy period, if

        (i) it replaces an *owned auto* as defined in (a) above; or

        (ii) we insure all *private passenger, farm* and *utility autos* owned by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;

    (d) a *temporary substitute auto*.

7. *"Private passenger auto"* means a four-wheel private passenger, station wagon or jeep-type auto, including a *farm* or *utility auto* as defined.

8. *"Relative"* means a person related to *you* who resides in *your* household, including *your* ward or foster child.

9. *"Temporary substitute auto"* means a private passenger, farm or utility auto or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

10. *"Trailer"* means a vehicle designed to be towed by a *private passenger auto*. If the vehicle is being used for business or commercial purposes, it is a *trailer* only while used with a *private passenger, farm* or *utility auto. Trailer* also means a farm wagon or farm implement used with a *farm auto*.

11. *"Utility auto"* means a vehicle, other than a *farm auto*, with a load capacity of 2,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

12. *"War"* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

13. *"You"* means the policyholder named in the declarations and his or her spouse if a resident of the same household.

#### LOSSES WE WILL PAY FOR YOU

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

    1. *bodily injury*, sustained by a person, and
    2. damage to or destruction of property,

arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.

2. All court costs charged to an *insured* in a covered law suit.

3. All interest accruing on that amount of a judgment which represents our limit of liability, until we have paid, offered or deposited in court that part of the judgment not exceeding the limit of our liability.

4. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of liability.

5. Premiums for bail bonds paid by an *insured* due to traffic law violations arising out of the use of an insured auto, not to exceed $250 per bail bond.

6. Costs incurred by any *insured* for first aid to others at the time of an accident involving an insured auto.

7. Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.

8. All reasonable costs incurred by an *insured* at our request.

## EXCLUSIONS

### When Section I Does Not Apply

1. We do not cover any *bodily injury* to any *insured* or any member of an *insured's* family residing in the *insured's* household.

This exclusion does not apply if the insured or member of the insured's household is injured as a passenger in a motor vehicle insured under this policy while that vehicle is being driven by a person who is not a relative.

2. Section I does not apply to any vehicle used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

3. We do not provide liability coverage for any person who intentionally causes *bodily injury* or property damage.

4. We do not cover *bodily injury* or property damage that is insured under a nuclear liability policy. This exclusion applies even if the limits of that policy are exhausted.

5. *Bodily injury* or property damage arising from the operation of farm machinery is not covered.

6. *Bodily injury* to an employee of an *insured* arising out of and in the course of employment by an *insured* is not covered.

However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workmen's compensation law.

7. We do not cover *bodily injury* to a fellow employee of an *insured* (other than *you*) injured in the course of his employment if the *bodily injury* arises from the use of an auto in the business of his employer, and if benefits are payable under a workmen's compensation policy.

8. We do not cover an *owned auto* while used by a person (other than *you* or a *relative* or *your* or *your relative's* partner, agent or employee) when he is employed or otherwise engaged in the *auto business.*

9. A *non-owned auto* while maintained or used by a person while he is employed or otherwise engaged in any *auto business* is not covered.

However, coverage does apply to a *non-owned private passenger auto* used by *you, your* chauffeur or a domestic servant, while engaged in the business of an *insured.*

10. We do not cover damage to:

   (a) property owned, or transported by an *insured;* or

   (b) property rented to or in charge of an *insured* other than a residence or private garage.

11. We do not cover an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.

12. We do not cover:

   (a) the United States of America or any of its agencies;

   (b) any person, including *you,* if protection is afforded under the provisions of the Federal Tort Claims Act.

## PERSONS INSURED

### Who Is Covered

Section I applies to the following as *insureds* with regard to an *owned auto:*

1. *you;*

2. any other person using the auto with *your* permission. The actual use must be within the scope of that permission;

3. any other person or organization for his or its liability because of acts or omissions of an *insured* under 1. or 2. above.

Section I applies to the following with regard to a *non-owned auto*:

1. *you* and *your relatives* when driving the *non-owned auto*. Such use must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission.

2. a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1. above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law.

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. We will not provide Bodily Injury Liability Coverage under this provision if that coverage is not purchased and shown in the policy declarations. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.

2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.

3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE

If the *insured* has other applicable insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle *you* do not own shall be excess over any *other* valid and collectible insurance.

## CONDITIONS

The following conditions apply to Section I:

1. NOTICE

As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:

   (a) the identity of the *insured*;
   (b) the time, place and details of the occurrence;
   (c) the names and addresses of the injured, and of any witnesses; and
   (d) the names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

2. TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3. *ASSISTANCE AND COOPERATION OF THE INSURED*

The *insured* will cooperate and assist us, if requested:

   (a) in the investigation of the occurrence;
   (b) in making settlements;
   (c) in the conduct of suits; and
   (d) in enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage; and
   (e) at trials and hearings;
   (f) in securing and giving evidence; and
   (g) by obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

4. ACTION AGAINST US

No suit will lie against us:

   (a) unless the *insured* has fully complied with all the policy's terms and conditions, and
   (b) until the amount of the *insured's* obligation to pay has been finally determined, either:

(i) by a final judgment against the *insured* after actual trial; or

(ii) by written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or of his estate will not relieve us of our obligations.

5. SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

When a person has been paid damages by us under this policy and also recovers from another, that person shall:

(a) hold in trust for us the amount recovered; and

(b) reimburse us to the extent of our payment.

## SECTION II - PERSONAL INJURY PROTECTION COVERAGE AND AUTOMOBILE MEDICAL PAYMENTS

### PART I - PERSONAL INJURY PROTECTION

#### PAYMENTS WE WILL MAKE

The Company will pay, in accordance with the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the injured person:

(a) 80% of *medical expenses*; and
(b) 60% of *work loss*;
(c) *replacement services expenses*; and
(d) death benefits incurred as a result of *bodily injury*, caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* and sustained by:

(1) *you* or any *relative* while *occupying* a *motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or

(2) any other person while *occupying* the *insured motor vehicle* or, while a *pedestrian*, through being struck by the *insured motor vehicle*.

In addition, we will pay, under Automobile Medical Payments coverage (applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage), subject to the coverage limit:

(a) the portion of any claim for Personal Injury Protection medical expense benefits otherwise covered but not payable due to the coinsurance provision of the Personal Injury Protection coverage. This is the 20% of *medical expenses* not covered in (a) of the first paragraph of this section;

(b) any *medical expenses* incurred that exceed the Personal Injury Protection medical expense coverage limit; and

(c) *medical expenses* incurred by an *insured* or *relative* that result from injuries received while *occupying* a *motor vehicle* or as a *pedestrian* in

an accident that occurs outside the state of Florida.

#### EXCLUSIONS

This insurance does not apply:

(a) to any *insured* injured while *occupying* any *motor vehicle* owned by that *insured* and which is not an *insured motor vehicle* under this insurance;

(b) to any person while operating the *insured motor vehicle* without *your* express or implied consent;

(c) to any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:

(i) causing *bodily injury* to himself intentionally;
(ii) while committing a felony;

(d) to *you* or any *relative* for *work loss* if an entry in the schedule or declarations indicates such coverage does not apply;

(e) to any *pedestrian*, other than *you* or any *relative*, not a legal resident of the State of Florida;

(f) to any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault law, as amended;

(g) to any person, other than *you* or any *relative*, who is entitled to personal injury protection benefits from the *owner* or *owners* of a *motor vehicle* which is not an *insured motor vehicle* under this insurance or from the *owner's* insurer; or

(h) to any person who sustains *bodily injury* while *occupying* a *motor vehicle* located for use as a residence or premises.

LIMIT OF LIABILITY; APPLICATION OF DEDUCTIBLE; OTHER INSURANCE

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law, as amended, from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident shall be $10,000; provided that payment for death benefits included in the foregoing shall in no event exceed $5,000.

Any amount payable under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workmen's compensation laws of any state or the federal government.

If benefits have been received under the Florida Motor Vehicle No-Fault Law, as amended, from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

The amount of any deductible stated in the declarations shall be deducted from the total amount of all sums otherwise payable by us with respect to all loss and expenses incurred by or on behalf of each person to whom the deductible applies and who sustains *bodily injury* as the result of any one accident, and if the total amount of such loss and expense exceeds such deductible, the total limit of benefits we are obligated to pay shall then be the difference between such deductible amount and the applicable limit of our liability. Such deductible will not apply to the death benefit.

If an entry in the declarations so indicates, any amount payable under this insurance to *you* or any *relatives* shall be reduced by any benefits payable by the Federal Government to active or retired military personnel and their dependent relatives. If such *benefits are not available* at the time of loss, we shall have the right to recompute and charge the appropriate premium.

DEFINITIONS

The definitions of the terms *"insured"* and *"you"* under Section I apply to Section II also.

When used in reference to this Section: *"bodily injury"* means bodily injury, sickness, or disease, including death at any time resulting therefrom.

*"Insured motor vehicle"* means a *motor vehicle*:

(a) of which *you* are the *owner*, and

(b) with respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and

(c) for which a premium is charged, or which is a trailer, other than a mobile home, designed for use with a *motor vehicle*;

*"Medical expenses"* means reasonable expenses for necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his religious beliefs;

*"Motor vehicle"* means any self-propelled vehicle of 4 or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle.

A *motor vehicle* does not include:

(a) any *motor vehicle* which is used in mass transit other than public school transportation and designed to transport more than 5 passengers exclusive of the operator of the *motor vehicle* and which is owned by a municipality, a transit authority, or a political subdivision of the state; or

(b) a mobile home.

*"Occupying"* means in or upon or entering into or alighting from;

*"Owner"* means a person or organization who holds the legal title to a *motor vehicle*, and also includes:

(a) a debtor having the right to possession, in the event a *motor vehicle* is the subject of a security agreement, and

(b) a lessee having the right to possession, in the event of a *motor vehicle* is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and

(c) a lessee having the right to possession, in the event a *motor vehicle* is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance;

*"Pedestrian"* means a person while not an occupant of any self-propelled vehicle;

*"Relative"* means a person related to *you* by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as *you*;

*"Replacement services expenses"* means with respect to the period of disability of the injured person all expenses reasonably incurred in obtaining from others

ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his household;

*"Work loss"* means with respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person.

### POLICY PERIOD; TERRITORY

The insurance under this Section applies only to accidents which occur during the policy period:

  (a) in the State of Florida;

  (b) as respects *you* or a *relative*, while *occupying* the *insured motor vehicle* outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

  (c) as respects *pedestrians* injured when struck by the *insured motor vehicle* in the State of Florida, if they are not the *owner* of a vehicle for which coverage is required to be maintained under the Florida No-Fault Law.

  (d) Additionally, applicable to the *Medical* Payments coverage only, if included on the policy, we will cover *you* or any *relative* for injuries incurred while *occupying* a *motor vehicle* within the United States of America, its territories or possessions or Canada.

### CONDITIONS

1. Notice. In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2. Action Against the Company. No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance, nor until 30 days after the required notice of accident and reasonable proof of claim has been filed with us.

3. Proof of Claim; Medical Reports and Examinations; Payment of Claim Withheld. As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examina-

tion, we will not be liable for subsequent personal injury protection benefits. Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

The *insured* and other persons making claim must submit to examination under oath by any person named by us when and as often as we may reasonably require.

4. Reimbursement and Subrogation. In the event of payment to or for the benefits of any injured person under this insurance:

  (a) the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

  (b) the Company providing *personal injury protection benefits* on a private passenger motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the owner or insurer of the owner of a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while *occupying*, or while a *pedestrian* through being struck by, such commercial motor vehicle.

5. Special Provision for Rented or Leased Vehicles. Notwithstanding any provision of this coverage to the contrary, if a person is injured while *occupying*, or through being struck by, a *motor vehicle* rented or leased under a rental or lease agreement which does not specify otherwise in bold type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary.

6. Arbitration. The Company, under this coverage, is entitled to binding arbitration of any claims dispute involving medical benefits arising between us and any person providing medical services or supplies if that person has agreed to accept assignment of personal injury protection benefits. The provisions of Chapter 682 relating to arbitration shall apply. The prevailing party shall be entitled to attorney's fees and costs.

## PART II - MODIFICATION OF POLICY COVERAGES

Any Automobile Medical Payments insurance, any Uninsured Motorists coverage or any excess Underinsured Motorists coverage afforded by the policy shall be excess over any Personal Injury Protection benefits paid or payable or which would be available but for the application of a deductible.

Regardless of whether the full amount of Personal Injury Protection benefits have been exhausted, any Medical Payments insurance afforded by this policy shall pay the portion of any claim for Personal Injury Protection *medical expenses* which are otherwise covered but not payable due to the limitation of 80% of *medical expenses* contained in Section I but shall not be payable for the amount of the deductible selected.

## PART III - PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law, as amended, providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the named insured pursuant to Section 12 (2) (e) of the Florida Motor Vehicle No-Fault Law, as amended, with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the *insured* shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

## SECTION III - PHYSICAL DAMAGE COVERAGES
### Your Protection For Loss Or Damage To Your Car

### DEFINITIONS

The definitions of the terms "*auto business*," "*farm auto*," "*non-owned auto*," "*private passenger auto*," "*relative*," "*temporary substitute auto*," "*utility auto*," "*you*," and "*war*" under Section I apply to Section III also. Under this Section, the following special definitions apply:

1. "*Actual cash value*" is the replacement cost of the auto or property less *depreciation* or *betterment*.

2. "*Betterment*" is improvement of the auto or property to a value greater than its pre-loss condition.

3. "*Collision*" means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.

4. "*Comprehensive*" means *loss* caused other than by *collision* and includes the following causes:

   (a) missiles;
   (b) falling objects;
   (c) fire;
   (d) lightning;
   (e) theft;
   (f) larceny;
   (g) explosion;
   (h) earthquake;
   (i) windstorm;
   (j) hail;
   (k) water;
   (l) flood;
   (m) malicious mischief;
   (n) vandalism;
   (o) riot;
   (p) civil commotion; or
   (q) colliding with a bird or animal.

5. "*Depreciation*" means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.

6. "*Insured*" means:

   (a) regarding the *owned auto*:

      (i) *you* and *your relatives;*
      (ii) a person or organization maintaining, using or having custody of the auto with *your* permission, if his use is within the scope of that permission.

   (b) regarding a *non-owned auto*:

      *you* and *your relatives*, when driving the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

7. "*Loss*" means direct and accidental loss of or damage to:

   (a) an insured auto, including its equipment; or
   (b) other property insured under this section.

8. "*Owned auto*" means:

   (a) any vehicle described in this policy for which a specific premium charge indicates there is coverage;
   (b) a *private passenger, farm* or *utility auto* or a *trailer*, ownership of which is acquired by *you* during the policy period; if

      (i) it replaces an *owned auto* as described in (a) above, or
      (ii) we insure all *private passenger, farm, utility autos* and *trailers* owned by *you* on the date of such acquisition and *you* request us

to add it to the policy within 30 days after-
ward;

(c) a *temporary substitute auto*.

9. *"Trailer"* means a trailer designed for use with a
*private passenger auto* and not used as a home, office,
store, display or passenger trailer.

## LOSSES WE PAY

### Comprehensive (Excluding *Collision*)

1. We will pay for each *loss*, less the applicable de-
ductible, caused other than by *collision* to the *owned* or
*non-owned auto*. This includes glass breakage.

No deductible will apply to *loss*:

(a) to windshield glass;
(b) caused by fire, lightning, smoke, or smudge; or
(c) as a result of damage sustained while the vehicle
is being transported on any conveyance.

At the option of the *insured*, breakage of glass caused
by *collision* may be paid under the *Collision* coverage, if
included in the policy.

2. We will pay, up to $200 per occurrence, less the ap-
plicable deductible, for *loss* to personal effects due to:

(a) fire;
(b) lightning;
(c) flood;
(d) falling objects;
(e) earthquake;
(f) explosion; or
(g) theft of the entire automobile.
No deductible will apply to *loss* from fire or light-
ning.

The property must be owned by *you* or a *relative*,
and must be in or upon an *owned auto*.

3. *Losses* arising out of a single occurrence shall be
subject to no more than one deductible.

### Collision

1. We will pay for *collision loss* to the *owned* or *non-
owned auto* for the amount of each *loss* less the applica-
ble deductible.

2. We will pay up to $200 per occurrence, less the ap-
plicable deductible, for *loss* to personal effects due to a
*collision*. The property must be owned by *you* or a *rela-
tive*, and must be in or upon an *owned auto*.

3. *Losses* arising out of a single occurrence shall be
subject to no more than one deductible.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER
## THE PHYSICAL DAMAGE COVERAGES

1. We will reimburse the *insured* for transportation ex-
penses incurred during the period beginning 48 hours
after a theft of the entire auto covered by Comprehensive
coverage under this policy has been reported to us and
the police. Reimbursement ends when the auto is re-
turned to use or we pay for the *loss*.

Reimbursement will not exceed $20.00 per day nor
$600.00 per *loss*.

2. We will pay for *loss* to any of the following equip-
ment (including *loss* to accessories and antennas):

(a) car phone;
(b) citizen's band radio;
(c) two-way mobile radio;
(d) scanning monitor receiver; or
(e) device designed for the recording and/or repro-
duction of sound.

We will pay only if the equipment at the time of *loss*:

(a) is permanently installed in or upon an *owned
auto*; and
(b) that auto is insured under the appropriate cover-
age.

3. We will pay general average and salvage charges for
which the *insured* becomes legally liable when the auto
is being transported.

## EXCLUSIONS

### When The Physical Damage Coverages Do Not Apply

1. An auto used to carry passengers or goods for hire is
not covered. However, a vehicle used in an ordinary car
pool on a ride sharing or cost sharing basis is covered.

2. *Loss* due to *war* is not covered.

3. We do not cover *loss* to a *non-owned auto* when
used by the *insured* in the *auto business*.

4. There is no coverage for *loss* caused by and limited
to wear and tear, freezing, mechanical or electrical break-
down or failure, unless that damage results from a cov-
ered theft.

5. We do not cover road damage to tires.

6. *Loss* due to radioactivity is not covered.

7. *Loss* to any tape, wire, record disc or other medium
for use with a device designed for the recording and/or
reproduction of sound is not covered.

8. We do not cover *loss* to any radar detector.

9. We do not cover any vehicle or *trailer* when used for
business or commercial purposes other than a *farm auto*.

10. We do not cover *loss* for custom options on an *owned auto*, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us.

## LIMIT OF LIABILITY

The limit of our liability for *loss*:

1. is the *actual cash value* of the property at the time of the *loss*;

2. will not exceed the cost to repair or replace the property, or any of its parts, with other of like kind and quality and will not include compensation for any diminution in the property's value that is claimed to result from the *loss*.

3. to personal effects arising out of one occurrence is $200;

4. to a *trailer not owned by you* is $500;

5. for custom options is limited to the *actual cash value* of equipment, furnishings or finishings (including paint) installed in or upon the vehicle only by the auto factory or an authorized auto dealer and included in the purchase price of the vehicle.

*Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

## OTHER INSURANCE

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro rata share of the total coverage available. Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

## CONDITIONS

The following conditions apply only to the Physical Damage coverages:

1. NOTICE

As soon as possible after a *loss*, written notice must be given us or our authorized agent stating:

(a) the identity of the insured;

(b) a description of the auto or *trailer*;

(c) the time, place and details of the *loss*; and

(d) the names and addresses of any witnesses.

In case of theft, the *insured* must promptly notify the police.

2. TWO OR MORE AUTOS

If this policy covers two or more autos or *trailers*, the limit of coverage and any deductibles apply separately to each.

3. *ASSISTANCE AND COOPERATION OF THE INSURED*

The *insured* will cooperate and assist us, if requested:

(a) in the investigation of the *loss*;

(b) in making settlements;

(c) in the conduct of suits;

(d) in enforcing any right of subrogation against any legally responsible person or organization;

(e) at trials and hearings;

(f) in securing and giving evidence; and

(g) by obtaining the attendance of witnesses.

4. ACTION AGAINST US

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

5. *INSURED'S DUTIES IN EVENT OF LOSS*

In the event of *loss* the *insured* will:

(a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.

(b) File with us, within 91 days after *loss*, his sworn proof of loss including all information we may reasonably require.

(c) At our request, the *insured* will exhibit the damaged property and submit to examination under oath.

6. APPRAISAL

If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of *loss* is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the actual *cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

7. PAYMENT OF *LOSS*

We may at our option:

(a) pay for the *loss*; or
(b) repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

8. NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

9. SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

## SECTION IV - UNINSURED MOTORISTS COVERAGE
### Protection For *You* And *Your* Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorists

### DEFINITIONS

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

1. **"Hit-and-run auto"** is an auto causing *bodily injury* to an *insured* and whose operator or owner cannot be identified, provided the *insured* or someone on his behalf:

   (a) reports the accident as soon as possible to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;
   (b) files with us as soon as possible a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person.

2. **"Insured"** means:

   (a) the individual named in the declarations and his or her spouse if a resident of the same household;
   (b) *relatives* of (a) above if residents of his household;
   (c) any other person while *occupying* an *insured auto*;
   (d) any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b), and (c) above.

   If there is more than one *insured*, our limits of liability will not be increased.

3. **"Insured auto"** is an auto:

   (a) described in the declarations and covered by the Bodily Injury Liability coverage of this policy;
   (b) temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;
   (c) operated by *you* or *your* spouse if a resident of the same household.

   But the term **"insured auto"** does not include:

   (i) an auto used to carry passengers or goods for hire, except in a car-pool;
   (ii) an auto being used without the owner's permission; or
   (iii) under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured*.

4. **"Occupying"** means in, upon, entering into or alighting from.

5. **"State"** includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

6. **"Uninsured auto"** is an auto:

   (a) which has no liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the *state* in which the *insured auto* is principally garaged at the time of the accident; or
   (b) for which the total of all bodily injury liability insurance available in the event of an accident is less than the damages sustained in an accident by an *insured*; or
   (c) a *hit-and-run auto*.

   This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

   The term **"uninsured auto"** does not include:

   (a) an *insured auto*;
   (b) an auto owned or operated by a self insurer within the meaning of any motor vehicle finan-

cial responsibility law, motor carrier law or any similar law;

(c) an auto owned by the United States of America, any other national government, a *state*, or a political subdivision of any such government or its agencies;

(d) a land motor *vehicle* or *trailer* operated on rails or crawler treads or located for use as a residence or premises; and

(e) a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

## LOSSES WE PAY

Under the Uninsured Motorists coverage we will pay damages for *bodily injury* caused by accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured auto* arising out of the ownership, maintenance or use of that auto.

However, we will not pay until the total of all bodily injury liability insurance available has been exhausted by payment of judgments or settlements.

## EXCLUSIONS

### When Section IV Does Not Apply

1. This coverage does not apply to *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

2. *Bodily injury* to an *insured* while *occupying* or when struck by any motor vehicle or motorcycle owned by an *insured* or a *relative*, which is not insured under the Liability Coverages section of this policy, is not covered.

3. The Uninsured Motorists coverage will not benefit any workmen's compensation insurer, self insurer, or disability benefits insurer.

4. We do not cover the United States of America or any of its agencies as an *insured*, a third party beneficiary or otherwise.

5. This coverage does not apply to any damages for pain and suffering that the *insured* may be legally entitled to recover against an uninsured motorist unless the injury or disease caused by the uninsured motorist accident resulted in:

(a) significant and permanent loss of an important bodily function; or

(b) permanent injury within a reasonable *degree* of medical probability, other than scarring or disfigurement; or

(c) significant and permanent scarring or disfigurement; or

(d) death.

6. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

## LIMITS OF LIABILITY

1. The limit of liability for Uninsured Motorists coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to *bodily injury* sustained by one person as the result of one accident. The most we will pay for all such damages, sustained by one person as the result of one accident, is the sum of the "each person" limits for Uninsured Motorists coverage shown in the declarations.

2. The limit of liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of one accident. The most we will pay for all such damages, sustained by two or more persons as the result of one accident, is the sum of the "each accident" limits for Uninsured Motorists coverage shown in the declarations.

3. The limit of liability for Uninsured Motorist coverage shall be over and above, but shall not duplicate the benefits available to an *insured* under any:

(a) workers' compensation law;

(b) personal injury protection benefits;

(c) disability benefits law or similar law; or

(d) automobile medical expense coverage.

4. The limit of liability for Uninsured Motorist coverage shall be over and above, but shall not duplicate any amount *paid* or *payable*:

(a) under any motor vehicle liability insurance coverages; or

(b) by or on behalf of the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident.

## OTHER INSURANCE

When an *insured occupies* an auto not described in this policy, and not owned by that *insured* or a *relative*, this insurance is excess over any other similar insurance available to the *insured* and the insurance which applies to the *occupied* auto is primary.

If the *insured* has other insurance against a loss covered by the Uninsured Motorist provisions of this policy, we will not be liable for more than our pro-rata share of the *total* coverage available.

## DISPUTES BETWEEN US AND AN *INSURED*

1. Disputes between an *insured* and us as to liability and damages may be submitted to arbitration. Arbitration must be agreed to in writing between the *insured* and us.

If arbitration is agreed upon, each party shall select an impartial arbitrator. These arbitrators shall select a third one.

The cost of the arbitration and any expenses for experts shall be paid by the party who hired them. The cost of the third arbitrator shall be paid equally by the parties.

2. If the *insured* and we cannot agree to arbitrate or agree to a third arbitrator, the *insured* shall:

   (a) sue the owner or driver of the *uninsured auto* and us in a court of competent jurisdiction. If the owner or driver is unknown, name us as the defendant.

   (b) when suit is filed, immediately give us copies of the suit papers.

3. If the *insured* agrees to settle with another insurer for their limits of liability coverage, the *insured* must submit this agreement to us in such settlement if the *insured* intends to pursue an uninsured motorist claim against us.

4. If within 30 days after receipt of the settlement agreement, we do not:

   (a) approve the settlement and the signing of the full release;

   (b) waive our subrogation rights; and

   (c) agree to arbitrate the claim,

the *insured* may then file suit against us and the person(s) legally liable.

5. Any award against us shall be binding and conclusive against us and the *insured* up to our coverage limit.

## TRUST AGREEMENT

Whenever we make a payment under this *coverage:*

1. We will be entitled to repayment of that amount out of any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury.*

2. The *insured* will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will *do whatever is necessary* to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3. At our written request, the *insured,* in his own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The *insured* will pay us out of the recovery for our expenses, costs and attorney's fees.

4. The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

## CONDITIONS

The following conditions apply only to the Uninsured Motorist coverage:

1. NOTICE

As soon as possible after an accident, notice must be given us or our authorized agent stating:

   (a) the identity of the *insured;*
   (b) the time, place and details of the accident; and
   (c) the names and addresses of the injured, and of any witnesses.

If the *insured* or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

2. ASSISTANCE AND COOPERATION OF THE *INSURED*

After we receive notice of a claim, we may require the *insured* to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us.

3. ACTION AGAINST US

Suit will not lie against us unless the *insured* or his legal representative have fully complied with all the policy terms.

4. PROOF OF CLAIM - MEDICAL REPORTS

As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

The *insured* and other persons making claim must submit to examination under oath by any person named by us when and as often as we may reasonably require. Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

5. PAYMENT OF LOSS

Any amount due is payable:

   (a) to the *insured* or his authorized representative;
   (b) if the *insured* is a minor, to his parent or guardian; or

(c) if the *insured* is deceased, to his surviving spouse; otherwise

(d) to a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with (d) above.

## SECTION V - GENERAL CONDITIONS
### These Conditions Apply To All Coverages In This Policy.

### 1. TERRITORY - POLICY PERIOD

This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories and possessions, or Canada and while an *owned auto* is being transported between ports thereof.

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at *your* address stated in the declarations.

### 2. PREMIUM

When *you* dispose of, acquire ownership of, or replace a *private passenger*, *farm* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

### 3. CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

The premium for each auto is based on the information we have in your file. *You* agree:

(a) that *we may adjust your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

(b) that *you* will cooperate with us in determining if this information is correct and complete.

(c) that *you* will notify us of any changes in this information.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

### 4. ASSIGNMENT

Assignment of interest under this policy will not bind us without our consent.

If *you* die, this policy will cover:

(a) *your* surviving spouse;

(b) the executor or administrator of *your* estate, but only while acting within the scope of his duties;

(c) any person having proper temporary custody of the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate; and

(d) under the medical payments coverage, a person who was a *relative* at the time of *your* death.

### 5. CANCELLATION BY THE *INSURED*

*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

However, *you* may not cancel during the first two months immediately following *your* policy's effective date except:

(a) upon total destruction of all of the *owned autos*;

(b) upon transfer of ownership of all of the *owned autos*;

(c) if *you* obtained a replacement policy covering an *owned auto* elsewhere; or

(d) when we notify *you* that the premium charged must be increased to comply with our rate filings or the applicable laws of Florida. In such event, *you* have ten days in which to request cancellation of the policy and a return of the unearned premium.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

### 6. CANCELLATION BY US

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective. This notice will be mailed by United States Post Office certificate of mailing.

We will mail this notice:

(a) 10 days in advance if the proposed cancellation is for nonpayment of premium or any of its installments when due;

(b) 45 days in advance in all other cases.

The *mailing or delivery of the above notice* will be sufficient proof of notice. The policy will cease to be in *effect as of the date and hour stated in the notice*.

A-30FL (2-98) Page 15 of 17

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

Payment or tender of unearned premium is not a condition of cancellation.

## 7. CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal, effective immediately, we will not cancel unless:

    (a) *You* do not pay the premiums for this policy or any installment when due to us or our agent; or

    (b) Any *insured* has had his driver's license or motor vehicle registration under suspension or revocation; either:

        (i) during the current policy period; or

        (ii) during the preceding 180 days if this is a new policy; or

    (c) There has been fraud or material misrepresentation under the policy in *your* application or in making a claim.

We will not cancel a new policy during the first 60 days immediately following the the effective date of the policy for nonpayment of premium unless the reason for the cancellation is the issuance of a check for the premium that is dishonored for any reason.

Nothing in this section will require us to renew this policy.

## 8. RENEWAL

We agree that we will not refuse to renew or continue this policy unless a written notice of our refusal to renew or continue is mailed to *you*, at the address shown in this policy, at least 45 days prior to the expiration date. This notice will be mailed by United States Post Office certificate of mailing. The mailing or delivery of this notice will be sufficient proof of notice.

    If:

    (1) *you* do not pay the premium as required to renew this policy; or

    (2) *you* have informed us or our agent that *you* wish the policy cancelled or not renewed; or

    (3) *you* do not accept our offer to renew; or

    (4) *you* refuse to provide us with renewal classification and rating information as we may require;

it will be construed to mean that *you* have refused our renewal offer and the policy will expire without notice.

If this policy has been in effect for 5 years or more we will not refuse to renew solely because an *insured* was involved in a single traffic accident.

## 9. MEDIATION OF CLAIMS

In the event of a claim for **bodily injury** amounting to $10,000 or less, or any property damage claim, either party may demand mediation of the claim, provided that suit has not yet been filed. Only one mediation may be demanded for each claim, unless both parties agree to more than one mediation. Mediation is not binding on either party.

A request for mediation shall be filed with the Department of Insurance on a form approved by the Department. The request for mediation shall state the reason for the request and the issues in dispute which are to be mediated. The Department of Insurance will appoint the mediator to conduct the mediation. Each party may once reject the mediator selected by the Department, either originally or after the opposing side has exercised its option to reject a mediator. Each party participating in the mediation must have the authority to make a binding decision. All parties must mediate in good faith.

The cost of the mediation, as set by the Department of Insurance, is shared equally by the parties. Costs incurred by a party in preparing for or attending the mediation are paid by the party incurring that cost.

## 10. OTHER INSURANCE

If other insurance is obtained on *your* insured auto, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

## 11. ACTION AGAINST US

*Persons* other than the *insured* covered by this policy, may not name us as a defendant prior to first obtaining a judgment against an *insured*.

## 12. DIVIDEND PROVISION

*You* are entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

## 13. DECLARATIONS

By accepting this policy, *you* agree that:

    (a) the statements in *your* application and in the declarations are *your* agreements and representations;

    (b) this policy is issued in reliance upon the truth of these representations; and

    (c) this policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

## 14. FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

    1. at the time application is made; or

    2. at any time during the policy period; or

3. in connection with the presentation or settlement of a claim.

## 15. EXAMINATION UNDER OATH

The *insured* or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may reasonably require.

## 16. TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Florida are amended to conform to those statutes.

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

### 1. SPECIAL ENDORSEMENT
UNITED STATES GOVERNMENT EMPLOYEES

A. Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

1. Motor vehicles owned or leased by the United States Government or any of its agencies, or
2. Rented motor vehicle used for United States Government business,

when such use is with the permission of the United States Government. Subject to the limits describe in paragraph B. below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

B. The following limits apply to this coverage:

1. A *$100* deductible applies to each occurrence.
2. For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:

a. The *actual cash value* of the property at the *time of the occurrence;* or
b. The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
c. Two months basic pay of the *insured;* or
d. The limit of Property Damage liability coverage stated in the declarations.

3. For vehicles described in A.2. above, our liability shall not exceed the *lesser* of the following:

a. the *actual cash value* of the property at the time of the occurrence; or
b. The *cost* to repair or replace the property, or any of it parts with other of like kind and quality; or
c. The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

J. C. Stewart
Secretary

O. M. Nicely
President

GOVERNMENT EMPLOYEES INSURANCE COMPANY
GEICO CASUALTY COMPANY
GEICO GENERAL INSURANCE COMPANY
GEICO INDEMNITY COMPANY
HOME OFFICE - 5260 Western Avenue
Chevy Chase, Maryland 20815-3799

# GEICO

Policy Number:

*Your policy is amended as follows:*

**SECTION III - Physical Damage Coverages**

**LIMIT OF LIABILITY**

The following numbered paragraph is added:

8.  for glass repair or replacement, is not to exceed the prevailing competitive price. This is the price we can secure from a competent glass repair facility conveniently located to *you* at the time *you* make *your* claim. Although *you* have the right to choose any glass repair facility or location, the limit of liability for *loss* to window glass is the cost to:

    (a) repair; or
    (b) replace

such glass but will not exceed the prevailing competitive price. If the glass is replaced, then the cost will be paid at the prevailing competitive price for replacement. At *your* request, we will identify a glass repair facility that will perform the repairs at the prevailing competitive price.

We affirm this amendment.

J. C. Stewart
    Secretary    •    GOVERNMENT EMPLOYEES INSURANCE COMPANY    •    President
                    GEICO GENERAL INSURANCE COMPANY

O. M. Nicely
President

SPECIMEN

# GEICO

# Automobile Policy Amendment

Policy Number:                                    **Florida**

**Your** policy is amended as follows:

Section II - Personal Injury Protection and Automobile Medical Payments is replaced in its entirety with the following:

### SECTION II: PART I -PERSONAL INJURY PROTECTION AND PART IV-AUTOMOBILE MEDICAL PAYMENTS

(Automobile Medical Payments Coverage applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)

## PART I - PERSONAL INJURY PROTECTION

### DEFINITIONS

The definitions of the terms **insured** and **you** under Section I apply to Section II also.

1. **Bodily injury** means bodily injury to a person, caused by accident, including resulting sickness, disease or death resulting therefrom. All claims for damages arising from **bodily injury** to a person from a single loss shall be considered one **bodily injury.**

2. **Insured motor vehicle** means a **motor vehicle**:
   (a) Of which **you** are the **owner**, and
   (b) With respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and
   (c) For which a premium is charged, or which is a trailer, other than a mobile home, designed for use with a **motor vehicle.**

3. **Medical expenses** means reasonable expenses for **medically necessary** medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person.

4. **Medically necessary** refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:
   (a) In accordance with generally accepted standards of medical practice;
   (b) Clinically appropriate in terms of type, frequency, extent, site, and duration; and
   (c) Not primarily for the convenience of the patient, physician, or other health care provider.

5. **Motor vehicle** means any self-propelled vehicle of four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle.

   A **motor vehicle** does not include:
   (a) Any **motor vehicle** which is used in mass transit other than public school transportation and designed to transport more than five passengers exclusive of the operator of the **motor vehicle** and which is owned by a municipality, a transit authority, or a political subdivision of the state; or
   (b) A mobile home.

6. **Occupying** means in or upon or entering into or alighting from;

7. **Owner** means a person or organization who holds the legal title to a **motor vehicle**, and also includes:
   (a) A debtor having the right to possession, in the event a **motor vehicle** is the subject of a security agreement, and
   (b) A lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and
   (c) A lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance;

8. **Pedestrian** means a person while not an occupant of any self-propelled vehicle;

9. **Relative** means a person related to **you** by blood, marriage or adoption (including a ward or foster child) who is usually a resident of the same household as **you**;

10. **Replacement services expenses** means with respect to the period of disability of the injured person all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his household;

11. **Work loss** means with respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person.

A-54FL (01-08)                        SPECIMEN                        Page 1 of 6

## PAYMENTS WE WILL MAKE

Under Personal Injury Protection, the Company will pay, in accordance with, and subject to the terms, conditions, and exclusions of the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the injured person:

    (a) 80% of *medical expenses*; and
    (b) 60% of *work loss*; and
    (c) *Replacement services expenses*; and
    (d) Death benefits.

The above benefits will be provided for injuries incurred as a result of *bodily injury*, caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* and sustained by:

    (1) *You* or any *relative* while *occupying* a *motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or
    (2) Any other person while *occupying* the *insured motor vehicle* or, while a *pedestrian*, through being struck by the *insured motor vehicle*.

## EXCLUSIONS

Section II - Part I does not apply:

1. To *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* and which is not an *insured motor vehicle* under this insurance;

2. To any person while operating the *insured motor vehicle* without *your* express or implied consent;

3. To any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:

    (i) Causing *bodily injury* to himself intentionally;
    (ii) While committing a felony;

4. To *you* or any dependent *relative* for *work loss* if an entry in the schedule or declarations indicates such coverage does not apply;

5. To any *pedestrian*, other than *you* or any *relative*, not a legal resident of the State of Florida;

6. To any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault law, as amended;

7. To any person, other than *you* or any *relative*, who is entitled to personal injury protection benefits from the *owner* or *owners* of a *motor vehicle* which is not an *insured motor vehicle* under this insurance or from the *owner's* insurer; or

8. To any person who sustains *bodily injury* while *occupying* a *motor vehicle* located for use as a residence or premises.

## LIMIT OF LIABILITY; APPLICATION OF DEDUCTIBLE; OTHER INSURANCE

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law, as amended, from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident shall be $10,000; provided that payment for death benefits included in the foregoing shall be equal to the lesser of $5,000 or the remainder of unused personal injury protection benefits per individual.

After the deductible is met, each *insured* is eligible to receive up to $10,000 in total benefits described. The amount of any deductible stated in the declarations shall be deducted from all expenses or losses as described in FL Stat. § 627.736 with respect to all *medical expenses*, *replacement services expenses* and *work loss* incurred by or on behalf of each person to whom the deductible applies and who sustains *bodily injury* as the result of any one accident. Such deductible will not apply to the death benefit.

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workmen's compensation laws of any state or the federal government.

If benefits have been received under the Florida Motor Vehicle No-Fault Law, as amended, from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

## POLICY PERIOD - TERRITORY

The insurance under this Section applies only to accidents which occur during the policy period:

    (a) In the State of Florida;
    (b) As respects *you* or a *relative*, while *occupying* the *insured motor vehicle* outside the State of Florida but within the United States of America, its territories or possessions or Canada; and
    (c) As respects *pedestrians* injured when struck by the *insured motor vehicle* in the State of Florida, if they are not the *owner* of a *motor vehicle* for which coverage is required to be maintained under the Florida No-Fault Law.

## CONDITIONS

### 1. NOTICE

In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

### 2. ACTION AGAINST THE COMPANY

No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance, and in accordance with, and subject to the terms, conditions, and exclusions of, the Florida Motor Vehicle No-Fault Law, as amended.

### 3. PROOF OF CLAIM; MEDICAL REPORTS AND EXAMINATIONS; PAYMENT OF CLAIM WITHHELD

As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. Such examinations shall be conducted within the municipality where the *insured* is receiving treatment, or in a location reasonably accessible to the *insured*, which, for purposes of this paragraph, means any location within the municipality in which the *insured* resides, or any location within 10 miles by road of the *insured's* residence, provided such location is within the county in which the *insured* resides. If the person unreasonably refuses to submit to an examination, we will not be liable for subsequent personal injury protection benefits.

Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

### 4. REIMBURSEMENT AND SUBROGATION

In the event of payment to or for the benefits of any injured person under this insurance:

(a) The Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

(b) The Company providing personal injury protection benefits on a private passenger motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the *owner* or insurer of the *owner* of a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while *occupying*, or while a *pedestrian* through being struck by, such commercial motor vehicle.

### 5. SPECIAL PROVISION FOR RENTED OR LEASED VEHICLES

Notwithstanding any provision of this coverage to the contrary, if a person is injured while *occupying*, or through being struck by, a *motor vehicle* rented or leased under a rental or lease agreement, within the state of Florida, which does not specify otherwise in at least 10 point type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary. Personal injury protection coverage offered under this policy will not apply to a vehicle rented, operated, used, or leased outside the state of Florida.

## PART II - MODIFICATION OF POLICY COVERAGES

Any Automobile Medical Payments insurance, any Uninsured Motorists coverage or any excess Underinsured Motorists coverage afforded by the policy shall be excess over any Personal Injury Protection benefits paid or available for payment or which would be available but for the application of a deductible.

Regardless of whether the full amount of Personal Injury Protection benefits have been exhausted, any Medical Payments insurance afforded by this policy shall pay the portion of any claim for Personal Injury Protection *medical expenses* which are otherwise covered but not available for payment due to the limitation of 80% of *medical expenses* contained in Part I but shall not be payable for the amount of the deductible selected.

## PART III - PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law, as amended, providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the named insured pursuant to the Florida Motor Vehicle No-Fault Law, as amended, with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the insured shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

## PART IV - AUTOMOBILE MEDICAL PAYMENTS COVERAGE

(Automobile Medical Payments coverage applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)

### DEFINITIONS

The definitions of the terms *insured* and *you* under Section I apply to Section II - Part IV also. The definitions under Section II - Part I also apply to Section II - Part IV.

### PAYMENTS WE WILL MAKE

Under Automobile Medical Payments coverage, the Company will pay benefits for injuries incurred as a result of *bodily injury*, caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* and sustained by:

    (1) *You* or any *relative* while *occupying a motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or

    (2) Any other occupants of the *insured motor vehicle* injured in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

In addition, we will pay, subject to the coverage limit:

    (a) The portion of any claim for Personal Injury Protection medical expense benefits otherwise covered but not payable due to the coinsurance provision of the Personal Injury Protection coverage. This is the 20% of *medical expenses* not covered in Part I - Payments We Will Make, item (a);

    (b) Any *medical expenses* incurred that exceed the Personal Injury Protection medical expense coverage limit; and

    (c) *Medical expenses* incurred by *you* or any *relative* that result from injuries received while *occupying a motor vehicle* or as a *pedestrian* in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

### EXCLUSIONS

Automobile Medical Payments coverage does not apply:

1. To *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* and which is not an *insured motor vehicle* under this insurance;

2. To any person while operating the *insured motor vehicle* without *your* express or implied consent;

3. To any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:

    (i) Causing *bodily injury* to himself intentionally;

    (ii) While committing a felony;

4. To any *pedestrian*, other than *you* or any *relative*; or

5. To any person who sustains *bodily injury* while *occupying a motor vehicle* located for use as a residence or premises.

### LIMIT OF LIABILITY

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of Automobile Medical Payments benefits available from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident is the amount listed in the declarations page.

### OTHER INSURANCE

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workmen's compensation laws of any state or the federal government.

If benefits have been received under any similar coverage from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim. This coverage will coordinate with any applicable Personal Injury Protection benefits but will not duplicate any benefits available for payment.

Any Uninsured Motorists coverage or any excess Underinsured Motorists coverage afforded by the policy shall be excess over any Automobile Medical Payments benefits paid or available for payment or which would be available but for the application of a deductible; and subject to the terms and conditions of the Uninsured/Underinsured Motorist coverage.

## POLICY PERIOD - TERRITORY

The insurance under this Section applies only to accidents which occur during the policy period:

(a) In the State of Florida;

(b) As respects *you* or a *relative*, while *occupying* the *insured motor vehicle* outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

(c) We will cover *you* or any *relative* for injuries incurred while *occupying* a *motor vehicle* or as a *pedestrian* in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada. This coverage is excess over any other valid and collectible insurance provided with respect to the occupied *motor vehicle*.

(d) We will cover occupants of the *insured motor vehicle* injured in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

## CONDITIONS

1. **NOTICE**

   In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2. **ACTION AGAINST THE COMPANY**

   No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance.

3. **PROOF OF CLAIM; MEDICAL REPORTS AND EXAMINATIONS; PAYMENT OF CLAIM WITHHELD**

   As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. Such examinations shall be conducted within the municipality where the *insured* is receiving treatment, or in a location reasonably accessible to the *insured*, which, for purposes of this paragraph, means any location within the municipality in which the *insured* resides, or any location within 10 miles by road of the *insured's* residence, provided such location is within the county in which the *insured* resides. If the person unreasonably refuses to submit to an examination, we will not be liable for subsequent automobile medical payment benefits.

   Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

   We also have the right to determine if incurred charges and treatment are reasonable, *medically necessary* and causally related to a *bodily injury* sustained in an accident. This determination may be made by use of utilization review, peer reviews, medical bill reviews or medical examination.

4. **SUBROGATION**

   In the event of payment to or for the benefits of any injured person under this insurance the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

## SECTION IV - UNINSURED MOTORISTS COVERAGE

### DEFINITIONS

Under what the term *"uninsured auto"* does not include, subparagraph (b) is deleted.

### LOSSES WE PAY

The following sentence is added to the first paragraph:

However, we will not pay damages for: (a) pain; (b) suffering; (c) mental anguish; or (d) inconvenience unless the *bodily injury* consists in whole or in part of:

(a) Significant and permanent loss of an important bodily function; or
(b) Permanent injury within a reasonable degree of medical probability; or
(c) Significant and permanent scarring or disfigurement; or
(d) Death.

The second paragraph is deleted.

### EXCLUSIONS

Exclusion 5. is deleted.

We affirm this amendment.


J. C. Stewart
Secretary

O. M. Nicely
President

**GEICO**

# Automobile Policy Amendment
## Emergency Road Service Coverage

Policy Number:

*Your* policy provisions are amended as follows:

SECTION III

PHYSICAL DAMAGE COVERAGES

Emergency Road Service

We will pay reasonable expenses an *insured* incurs for the *owned* or *non-owned auto*, for:

1. mechanical labor up to one hour at the place of breakdown;
2. lockout services up to $100 per lockout if keys to the auto are lost, broken or accidentally locked in the auto;
3. if it will not run, towing to the nearest repair facility where the necessary repairs can be made;
4. towing it out if it is stuck on or immediately next to a public highway;
5. delivery of gas, oil, loaned battery, or change of tire. WE DO NOT PAY FOR THE COST OF THE GAS, OIL, LOANED BATTERY, OR TIRE(S).

OBTAINING SERVICE UNDER THIS AMENDMENT

*You* may secure service under this amendment in the following manner:

SIGN AND DRIVE

The first method, called sign and drive, features a toll-free number in which the *insured* calls a GEICO Emergency Road Service representative who will dispatch a service vendor. Upon verification of Emergency Road Service (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor. The *insured* need only sign a receipt at the time of service which authorizes the company to directly pay the *service vendor*. Any additional mileage, other fees not specifically addressed above, or lockout services in excess of $100 will be at the *insured's* expense.

HIRED SERVICES

The second method occurs when the *insured* does not use the sign and drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $50 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

There will be a limit of one reimbursement per disablement.

We affirm this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President

SPECIMEN

A-115 (04-08)

# GEICO

We agree with you as follows:

SECTION III

PHYSICAL DAMAGE COVERAGES

Section III is amended to provide Multi-Risk Physical Damage Coverages. This includes:

1. comprehensive;
2. collision; and
3. mechanical breakdown protection.

This amendment is subject to all policy conditions and definitions except as specifically modified below.

The amount of applicable deductible shown in the policy *declarations* shall apply to each *loss* under the Multi-Risk Coverage. A $50 deductible shall apply to glass breakage, except windshield glass, without any other damage to the auto.

## Mechanical Breakdown

We will pay for *loss* caused other than by *collision* or under the comprehensive coverage due to the mechanical breakdown of the *owned auto*. *Losses* from mechanical breakdown shall not be accumulated to reach the deductible.

## Definitions

For the purposes of this amendment, the following special definitions apply with respect to mechanical breakdown only:

3. "Loss" means all risk of physical damage to the *owned auto* or its equipment.

5. "Owned auto" means any vehicle described in this policy for which a specific premium charge indicates there is coverage. "Owned auto" does not mean:

a) a newly acquired vehicle; or

b) a replacement vehicle; or

c) a *temporary substitute auto*.

## Exclusions

For the purposes of this amendment only, with respect to mechanical breakdown, exclusion 4 is deleted. The following exclusions are added:

# Family Automobile Policy Amendment

# Multi-Risk Physical Damage Coverage

11. Oxidation and rust damage are not covered.

12. Damage caused intentionally by *you* or any other person using an *owned auto* with your permission is not covered.

13. *Loss* due to misuse, alteration, or lack of proper maintenance is not covered. Proper maintenance is the recommended vehicle maintenance as outlined in the owner's manual provided by the manufacturer.

14. Tire wear and other damage caused by and limited to wear and tear is not covered.

15. Routine maintenance services and parts are not covered. This includes; but is not limited to:

a) engine tune up;

b) suspension alignment;

c) wheel balancing;

d) filters;

e) lubrication;

f) *engine coolant*;

g) fluids;

h) spark or glow plugs;

i) brake pads;

j) brake linings; and

k) brake shoes.

16. Any *loss* to the extent covered by warranty, recall or voluntary repair programs is not covered.

17. Any *loss* to a *non-owned auto* or to a *temporary substitute auto* is not covered.

18. Any *loss* to a newly acquired or replacement auto is not covered.

19. Any pre-existing *loss* or damage to any insured auto is not covered.

20. The mechanical breakdown protection portion of Multi-Risk Coverage will either terminate when the Odometer reading exceeds 100,000 miles or when the age of the vehicle is 7 years old, whichever occurs earlier. The 7 year stipulation will only apply to vehicles that are 1996 *model year and later*.

**SPECIMEN**

## Uninsured Motorist Coverage (Non-Stacked)
## (Florida)

Policy Number:

In consideration of the payment of premium for this coverage, and subject to all the terms of the policy, we agree with *you* as follows:

Section IV, LIMIT OF LIABILITY, is amended by adding the following paragraphs:

5. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations.

6. If at the time of the accident the injured person is *occupying* an auto insured by us, the amount of coverage available to the injured person is the limit specified in the declarations for the *occupied* auto.

7. If at the time of the accident the injured person is not *occupying* a motor vehicle, the injured person is entitled to select any one limit of any one auto insured under this coverage.

8. If at the time of the accident the injured person is *occupying* a motor vehicle which is not owned by him or by a family member residing with him, he is entitled to the highest limits of uninsured motorist coverage afforded for any one vehicle as to which he is the named insured or insured family member. Such coverage shall be excess over the coverage on the vehicle he is *occupying*.

If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of liability for a loss.

THE COMPANY affirms this endorsement.

J. C. Stewart
Secretary    •    GOVERNMENT EMPLOYEES INSURANCE COMPANY    •    President
GEICO GENERAL INSURANCE COMPANY

O. M. Nicely
President

A-239 (7-88)

SPECIMEN

Policy Number:

We agree with you that the policy is amended as follows:

**SECTION III - PHYSICAL DAMAGE COVERAGES**

The following coverage is added:

**Coverage-Rental Reimbursement**

When there is a *loss* to an *owned auto* for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the *insured* toward costs the *insured* incurs to rent an auto. Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the *owned auto*. This coverage applies only if:

1. The *owned auto* is withdrawn from use for more than 24 consecutive hours, and
2. The *loss* to the *owned auto* is covered under comprehensive or collision coverage of this policy.

When there is a total theft of the entire auto, we will reimburse the *insured* toward costs the *insured* incurs to rent an auto, subject to the following limitations:

1. This coverage will reimburse the *insured* for reasonable rental expenses beginning 48 hours after a theft of the entire vehicle covered under the comprehensive coverage of this policy; and
2. This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III of the policy. In that event, the amount payable under this amendment is the amount by which this coverage exceeds those described in Section III of the policy; and
3. Subject to number 2 above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III of the policy exceed the daily limit of coverage provided by this amendment.

Reimbursement for rental charges shall end the earliest of when the *owned auto* has been:

1. Returned to *you*;
2. Repaired;
3. Replaced; or
4. If the *owned auto* is deemed by us to be a total loss, then seventy two (72) hours after we pay the applicable limit of liability under Section III.

No deductible applies to this coverage.

The coverage provided by this amendment is subject to all the provisions and conditions of SECTION III of the policy.

The COMPANY affirms this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President

SPECIMEN

A-431 (08-06)

# ENDORSEMENT

## LOSS PAYABLE CLAUSE

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number:

Effective Date:

Any claim under the Physical Damage Coverages of the policy will be paid jointly to the *insured* and the Lienholder in the Declarations.

The Lienholder must notify us if he becomes aware of any increased hazard or change of ownership of the auto or he will lose all of his rights under this policy.

If the *insured* fails to file with us a Proof of *Loss* within 91 days after the loss, the Lienholder must do so within the following 60 days. The policy provisions on time of payment, appraisal and the right to sue us applies both to the Lienholder and the *insured*. We may settle a claim at our option by separate payment to the insured and the Lienholder.

Whenever we pay the Lienholder, we shall be subrogated to the Lienholder's rights of recovery to the extent of the payment. If the policy is in effect as to the Lienholder but has been canceled as to the *insured*, the Lienholder must assign the loan to us if we ask and we pay the full amount due.

We will mail notice to the Lienholder at least 10 days before we cancel his interest in the policy.

This endorsement forms a part of your policy.  It is effective at 12:01 A.M.  local time at your address on the effective date shown above.

### RETAIN THIS COPY FOR YOUR RECORDS

_____

Countersigned by Authorized Representative

UE-316 (4-85)

SPECIMEN

Exhibit B

## Civil Remedy Notice of Insurer Violations

Filing Number: **287609**

Filing Accepted: **6/10/2015**

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **ANGELA COLLINS** |
| Street Address: | **6819 VINTAGE LANE** |
| City, State Zip: | **PORT ORANGE, FL 32128** |
| Email Address: | |
| Complainant Type: | **Insured** |

### Insured

| | |
|---|---|
| Name: | **ANGELA COLLINS** |
| Policy #: | **4111-11-82-06** |
| Claim #: | **033425101 0101 042** |

### Attorney

| | |
|---|---|
| Name: | **MATTHEW D. POWELL** |
| Street Address: | **304 S. PLANT AVE.** |
| City, State Zip: | **TAMPA, FL 33606** |
| Email Address: | **MATT@MATTLAW.COM** |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **GEICO GENERAL INSURANCE COMPANY** |
| Street Address: | |
| City, State Zip: | , |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**WADE KNOECK**

Type of Insurance: **Auto**

DFS-10-363
Rev. 11/2007

Filing Number:        287609

## Reason for Notice

Reasons for Notice:

Claim Denial

Claim Delay

Unsatisfactory Settlement Offer

Unfair Trade Practice

---

**PURSUANT TO SECTION 624.155, F.S.** please indicate all statutory provisions alleged to have been violated.

| | |
|---|---|
| 624.155(1)(b)(1) | Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests. |
| 624.155(1)(b)(3) | Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. |
| 626.9541(1)(i)(3)(a) | Failing to adopt and implement standards for the proper investigation of claims. |
| 626.9541(1)(i)(3)(b) | Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue. |
| 626.9541(1)(i)(3)(c) | Failing to acknowledge and act promptly upon communications with respect to claims. |
| 626.9541(1)(i)(3)(d) | Denying claims without conducting reasonable investigations based upon available information. |
| 626.9541(1)(i)(3)(e) | Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed. |
| 626.9541(1)(i)(3)(f) | Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement. |
| 626.9541(1)(i)(3)(g) | Failing to promptly notify the insured of any additional information necessary for the processing of a claim. |

---

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**Geico General Insurance Company UM language policy 4111-11-82-06**

**SECTION IV - UNINSURED MOTORISTS COVERAGE**
**Protection For You And Your Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorists**
**DEFINITIONS**
The definitions of terms for Section I apply to Section
IV. except for the following special definitions:
1. "Hit-and-run auto" is an auto causing bodily injury to an insured and whose operator or owner cannot be identified, provided the insured or someone on his behalf:

(a) reports the accident as soon as possible to a police peace or judicial officer or to the Commissioner of Motor Vehicles;

(b) files with us as soon as possible a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person.

2. "Insured" means:

(a) the individual named in the declarations and his or her spouse if a resident of the same household;

(b) relatives of (a) above if residents of his household;

(c) any other person while occupying an insured auto;

(d) any person who is entitled to recover damages because of bodily injury sustained by an insured under (a). (b). and (e) above.

If there is more than one insured, our limits of liability will not be increased.

3. "Insured auto" is an auto:

(a) described in the declarations and covered by the Bodily Injury Liability coverage of this policy;

(b) temporarily substituted for an insured auto when withdrawn from normal use because of its Breakdown, repair, servicing, loss or destruction;

(c) operated by you or your spouse if a resident of the same household.

But the term "insured auto" does not include:

(i) an auto used to carry passengers or goods for hire, except in a car-pool;

(ii) an auto being used without the owner's permission; or

(iii) under subparagraphs (b) and (c) above  an auto owned by or furnished for the regular use of an insured.

4. "Occupying" means in. upon, entering into or alighting from.

5. "State" includes the District of Columbia  the territories and possessions of the United States  and the Provinces of Canada.

6. "Uninsured auto" is an auto:

(a) which has no liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the state in which the insured auto is principally garaged at the time of the accident; or

(b) for which the total of all bodily injury liability insurance available in the event of an accident is less than the damages sustained in an accident by an insured; or

(c) a hit-and-run auto.

This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

The term "uninsured auto" does not include:(a) an insured auto;

(b) an auto owned or operated by a self insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

(c) an auto owned by the United States of America, any other national government, a state, or a political subdivision of any such government or its agencies;

(d) a land motor vehicle or trailer operated on rails or crawler treads or located for use as a residence or premises  and

(e) a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

LOSSES WE PAY

Under the Uninsured Motorists coverage we will pay damages for bodily injury caused by accident which the insured is legally entitled to recover from the owner or operator of an uninsured auto arising out of the ownership, maintenance or use of that auto.

However, we will not pay until the total of all bodily injury liability insurance available has been exhausted by payment of judgments or settlements.

EXCLUSIONS

 When Section IV Does Not Apply

1. This coverage does not apply to bodily injury to an insured if the insured or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

2. Bodily injury to an insured while occupying or when struck by any motor vehicle or motorcycle owned by an insured or a relative, which is not insured under the Liability Coverages section of this policy, is not covered.

3. The Uninsured Motorists coverage will not benefit any workmen's compensation insurer, self insurer, or disability benefits insurer.

4. We do not cover the United States of America or any of its agencies as an insured, a third party beneficiary or otherwise.

5. This coverage does not apply to any damages for pain and suffering that the insured may be legally entitled to recover against an uninsured motorist unless the injury or disease caused by the uninsured motorist accident resulted in:

(a) significant and permanent loss of an important bodily function; or

(b) permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement: or

(e) significant and permanent scarring or disfigurement or

(d) death.

6. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

LIMITS OF LIABILITY

1. The limit of liability for Uninsured Motorists coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to bodily injury sustained by one person as the result of one accident.

The most we will pay for all such damages, sustained by one person as the result of one accident, is the sum of the "each person" limits for Uninsured Motorists coverage shown in the declarations.

2. The limit of liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of bodily injury sustained by two or more persons as the result of one accident. The most we will pay for all such damages. sustained by two or more persons as the result of one accident, is the sum of the "each accident" limits for Uninsured Motorists coverage shown in the declarations.

3. The limit of liability for Uninsured Motorist coverage shall be over and above, but shall not duplicate the benefits available to an insured under any:

(a) workers' compensation law;

(b) personal injury protection benefits;

(c) disability benefits law or similar law; or

(d) automobile medical expense coverage.

4. The limit of liability for Uninsured Motorist coverage shall be over and above, but shall not duplicate any amount paid or payable:

(a) under any motor vehicle liability insurance coverages; or

(b) by or on behalf of the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident.

OTHER INSURANCE

When an insured occupies an auto not described in this policy, and not owned by that insured or a relative this insurance is excess over any other similar insurance available to the insured and the insurance which applies to the occupied auto is primary.

If the insured has other insurance against a loss covered by the Uninsured Motorist provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

DISPUTES BETWEEN US AND AN INSURED

1. Disputes between an insured and us as to liability and damages may be submitted to arbitration. Arbitration must be agreed to in writing between the insured and us.

If arbitration is agreed upon, each party shall select an impartial arbitrator. These arbitrators shall select a third one.

The cost of the arbitration and any expenses for experts shall be paid by the party who hired them. The cost of the third arbitrator shall be paid equally by the parties.

2. If the insured and we cannot agree to arbitrate or agree to a third arbitrator, the insured shall:

(a) sue the owner or driver of the uninsured auto and us in a court of competent jurisdiction. IT the owner or driver is unknown, name us as the defendant.

(b) when suit is filed, immediately give us copies of the suit papers.

3. If the insured agrees to settle with another insurer for their limits of liability coverage, the insured must submit this agreement to us in such settlement if the insured intends to pursue an uninsured motorist claim against us.

4. If within 30 days after receipt of the settlement agreement, we do not:

(a) approve the settlement and the signing of the full release;

(b) waive our subrogation rights; and

(c) agree to arbitrate the claim,

the insured may then file suit against us and the person(s)legally liable.

s. Any award against us shall be binding and conclusive against us and the insured up to our coverage limit.

TRUST AGREEMENT

Whenever we make a payment under this coverage:

1. We will be entitled to repayment of that amount out of any settlement or judgment the insured recovers from any person or organization legally responsible for the bodily injury.

2. The insured will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3. At our written request, the insured, in his own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The insured will pay us out of the recovery for our expenses, costs and attorney's fees.

4. The insured will execute and furnish us with any needed documents to secure his and our rights and obligations.

CONDITIONS

The following conditions apply only to the Uninsured
Motorist coverage:

1. NOTICE

As soon as possible after an accident, notice must be given us or our authorized agent stating:
(a) the identity of the insured;
(b) the time, place and details of the accident; and
(e) the names and addresses of the injured. and of any witnesses.
If the insured or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

2. ASSISTANCE AND COOPERATION OF THE INSURED

After we receive notice of a claim, we may require the insured to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the insured to make that person or organization a defendant in any action against us.

3. ACTION AGAINST US

Suit will not lie against us unless the insured or his legal representative have fully complied with all the policy terms.

4. PROOF OF CLAIM - MEDICAL REPORTS

As soon as possible, the insured or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable. The insured and other persons making claim must submit to examination under oath by any person named by us when and as often as we may reasonably require. Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the insured's incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

5. PAYMENT OF LOSS

Any amount due is payable:
(a) to the insured or his authorized representative:
(b) if the insured is a minor, to his parent or guardian; or
(c) if the insured is deceased, to his surviving spouse; otherwise
(d) to a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.
We may, at our option, pay an amount due in accordance with (d) above.


SECTION IV· UNINSURED MOTORISTS COVERAGE

DEFINITIONS

Under what the term "uninsured auto" does not include, subparagraph (b) is deleted.

LOSSES WE PAY

The following sentence is added to the first paragraph:
However, we will not pay damages for: (a) pain; (b) suffering; (c) mental anguish; or (d) inconvenience unless the bodily injury consists in whole or in part of:
(a) Significant and permanent loss of an important bodily function; or
(b) Permanent injury within a reasonable degree of medical probability; Or
(c) Significant and permanent scarring or disfigurement; or ·
(d) Death.
The second paragraph is deleted.

EXCLUSIONS

Exclusion 5 is deleted.


Uninsured Motorist Coverage (Non-Stacked)
(Florida)

In consideration' of the payment of premium for this coverage and subject to all the terms of the policy. we agree with you as follows:
Section IV. LIMIT OF LIABILITY. is amended by adding the following paragraphs:
5. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations.
6. If at the time of the accident the injured person is occupying an auto insured by us, the amount of coverage available to the injured person is the limit specified in the declarations for the occupied auto.
7. If at the time of the accident the injured person is not occupying a motor vehicle. the injured person is entitled to select anyone limit of anyone auto insured under this coverage.
B. If at the time of the accident the injured person is occupying a motor vehicle which is not owned by him or by a family member residing with him. he is entitled to the highest limits of uninsured motorist coverage afforded for anyone vehicle as to which he is the named insured or insured family member. Such coverage

shall be excess over the coverage on the vehicle he is occupying.

If separate policies with us are in effect for you or any person in your household, they may not be combined to increase the limit of liability for a loss.

THE COMPANY affirms this endorsement

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

The Insurance carrier has not paid the policy limits of $100,000.00 in this case which presently clearly warrants payment of the aforementioned policy limits. The facts and circumstances of this violation include; that we have provided documentation to the Insurance carrier for them to become informed that this claim warrants the policy limits payment, and the Insurance carrier has failed to proactively monitor this claim, and if they had they had properly investigated and reviewed this claim the Insurance carrier would know that this claim warrants payment of the policy limits. The Insurance Carrier can cure or remedy the alleged deficiency complained of by simply paying the policy limits of $100,000.00 to the claimant within 60 days from the date of receipt of the civil remedy notice by the insurance carrier, herein. If the insurance company wants to fix their mistake of not paying the policy limits, they can do so by making the payment payable jointly to Angela Collins and Powell & Espat. Deliver the payment to Powell & Espat at 304 Plant Avenue, Tampa, Florida 33606 within 60 days of receipt of the civil remedy notice by the insurance carrier. In so doing, it would be a complete, full and final resolution of any and all claims of Angela Collins known and unknown and of the consortium claim of Nicholas Collins including any and all attorneys fees and costs as well as any and all alleged damages for any potential lack of good faith (Bad Faith) claim stemming directly or indirectly from the subject motor vehicle accident. In short, it would be a complete cure or remedy of the deficiency complained of and a complete resolution of the claims described above. This notice is given in order to perfect the rights of Angela Collins who was damaged, to pursue civil remedies authorized by Section 624.155, Florida Statutes.

| Comments | | |
|---|---|---|
| User Id | Date Added | Comment |

Exhibit C

Filing Number: **302967**

Filing Accepted: **12/31/2015**

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **NICOLE COLLINS** |
| Street Address: | **6819 VINTAGE LANE** |
| City, State Zip: | **PORT ORANGE, FL 32128** |
| Email Address: | |
| Complainant Type: | **Insured** |

### Insured

| | |
|---|---|
| Name: | **NICOLE COLLINS** |
| Policy #: | **4111-11-82-06** |
| Claim #: | **0334251010101042** |

### Attorney

| | |
|---|---|
| Name: | |
| Street Address: | |
| City, State Zip: | , |
| Email Address: | |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **GEICO GENERAL INSURANCE COMPANY** |
| Street Address: | |
| City, State Zip: | , |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**WADE KNOECK**

Type of Insurance: **Auto**

DFS-10-363
Rev. 11/2007

Filing Number:     **302967**

Reasons for Notice:

**Claim Denial**

**Claim Delay**

**Unsatisfactory Settlement Offer**

**Unfair Trade Practice**

PURSUANT TO SECTION 624.155, F.S. please indicate all statutory provisions alleged to have been violated.

| | |
|---|---|
| 624.155(1)(b)(1) | **Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.** |
| 624.155(1)(b)(3) | **Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.** |
| 626.9541(1)(i)(3)(a) | **Failing to adopt and implement standards for the proper investigation of claims.** |
| 626.9541(1)(i)(3)(b) | **Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue.** |
| 626.9541(1)(i)(3)(c) | **Failing to acknowledge and act promptly upon communications with respect to claims.** |
| 626.9541(1)(i)(3)(d) | **Denying claims without conducting reasonable investigations based upon available information.** |
| 626.9541(1)(i)(3)(e) | **Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed.** |
| 626.9541(1)(i)(3)(f) | **Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement.** |
| 626.9541(1)(i)(3)(g) | **Failing to promptly notify the insured of any additional information necessary for the processing of a claim.** |

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**Geico General Insurance Company UM language policy 4111-11-82-06**

**SECTION IV - UNINSURED MOTORISTS COVERAGE**
**Protection For You And Your Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorists**
**DEFINITIONS**
**The definitions of terms for Section I apply to Section**
**IV. except for the following special definitions:**
**1. "Hit-and-run auto" is an auto causing bodily injury to an insured and whose operator or owner cannot be identified, provided the insured or someone on his behalf:**

(a) reports the accident as soon as possible to a police peace or judicial officer or to the Commissioner of Motor Vehicles;

(b) files with us as soon as possible a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person.

2. "Insured" means:

(a) the individual named in the declarations and his or her spouse if a resident of the same household;

(b) relatives of (a) above if residents of his household;

(c) any other person while occupying an insured auto;

(d) any person who is entitled to recover damages because of bodily injury sustained by an insured under (a). (b). and (e) above.

If there is more than one insured, our limits of liability will not be increased.

3. "Insured auto" is an auto:

(a) described in the declarations and covered by the Bodily Injury Liability coverage of this policy;

(b) temporarily substituted for an insured auto when withdrawn from normal use because of its Breakdown, repair, servicing, loss or destruction;

(c) operated by you or your spouse if a resident of the same household.

But the term "insured auto" does not include:

(i) an auto used to carry passengers or goods for hire, except in a car-pool;

(ii) an auto being used without the owner's permission; or

(iii) under subparagraphs (b) and (c) above an auto owned by or furnished for the regular use of an insured.

4. "Occupying" means in. upon, entering into or alighting from.

5. "State" includes the District of Columbia the territories and possessions of the United States and the Provinces of Canada.

6. "Uninsured auto" is an auto:

(a) which has no liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the state in which the insured auto is principally garaged at the time of the accident; or

(b) for which the total of all bodily injury liability insurance available in the event of an accident is less than the damages sustained in an accident by an insured; or

(c) a hit-and-run auto.

This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

The term "uninsured auto" does not include:(a) an insured auto;

(b) an auto owned or operated by a self insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

(c) an auto owned by the United States of America, any other national government, a state, or a political subdivision of any such government or its agencies;

(d) a land motor vehicle or trailer operated on rails or crawler treads or located for use as a residence or premises and

(e) a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

LOSSES WE PAY

Under the Uninsured Motorists coverage we will pay damages for bodily injury caused by accident which the insured is legally entitled to recover from the owner or operator of an uninsured auto arising out of the ownership, maintenance or use of that auto.

However, we will not pay until the total of all bodily injury liability insurance available has been exhausted by payment of judgments or settlements.

EXCLUSIONS

When Section IV Does Not Apply

1. This coverage does not apply to bodily injury to an insured if the insured or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

2. Bodily injury to an insured while occupying or when struck by any motor vehicle or motorcycle owned by an insured or a relative, which is not insured under the Liability Coverages section of this policy, is not covered.

3. The Uninsured Motorists coverage will not benefit any workmen's compensation insurer, self insurer, or disability benefits insurer.

4. We do not cover the United States of America or any of its agencies as an insured, a third party beneficiary or otherwise.

5. This coverage does not apply to any damages for pain and suffering that the insured may be legally entitled to recover against an uninsured motorist unless the injury or disease caused by the uninsured motorist accident resulted in:

(a) significant and permanent loss of an important bodily function; or

(b) permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement: or

(e) significant and permanent scarring or disfigurement or

(d) death.

6. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

LIMITS OF LIABILITY

1. The limit of liability for Uninsured Motorists coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to bodily injury sustained by one person as the result of one accident.

The most we will pay for all such damages, sustained by one person as the result of one accident, is the sum of the "each person" limits for Uninsured Motorists coverage shown in the declarations.

2. The limit of liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of bodily injury sustained by two or more persons as the result of one accident. The most we will pay for all such damages. sustained by two or more persons as the result of one accident, is the sum of the "each accident" limits for Uninsured Motorists coverage shown in the declarations.

3. The limit of liability for Uninsured Motorist coverage shall be over and above, but shall not duplicate the benefits available to an insured under any:

(a) workers' compensation law;

(b) personal injury protection benefits;

(c) disability benefits law or similar law; or

(d) automobile medical expense coverage.

4. The limit of liability for Uninsured Motorist coverage shall be over and above, but shall not duplicate any amount paid or payable:

(a) under any motor vehicle liability insurance coverages; or

(b) by or on behalf of the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident.

OTHER INSURANCE

When an insured occupies an auto not described in this policy, and not owned by that insured or a relative this insurance is excess over any other similar insurance available to the insured and the insurance which applies to the occupied auto is primary.

If the insured has other insurance against a loss covered by the Uninsured Motorist provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

DISPUTES BETWEEN US AND AN INSURED

1. Disputes between an insured and us as to liability and damages may be submitted to arbitration. Arbitration must be agreed to in writing between the insured and us.

If arbitration is agreed upon, each party shall select an impartial arbitrator. These arbitrators shall select a third one.

The cost of the arbitration and any expenses for experts shall be paid by the party who hired them. The cost of the third arbitrator shall be paid equally by the parties.

2. If the insured and we cannot agree to arbitrate or agree to a third arbitrator, the insured shall:

(a) sue the owner or driver of the uninsured auto and us in a court of competent jurisdiction. IT the owner or driver is unknown, name us as the defendant.

(b) when suit is filed, immediately give us copies of the suit papers.

3. If the insured agrees to settle with another insurer for their limits of liability coverage, the insured must submit this agreement to us in such settlement if the insured intends to pursue an uninsured motorist claim against us.

4. If within 30 days after receipt of the settlement agreement, we do not:

(a) approve the settlement and the signing of the full release;

(b) waive our subrogation rights; and

(c) agree to arbitrate the claim,

the insured may then file suit against us and the person(s)legally liable.

s. Any award against us shall be binding and conclusive against us and the insured up to our coverage limit.

TRUST AGREEMENT

Whenever we make a payment under this coverage:

1. We will be entitled to repayment of that amount out of any settlement or judgment the insured recovers from any person or organization legally responsible for the bodily injury.

2. The insured will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3. At our written request, the insured, in his own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The insured will pay us out of the recovery for our expenses, costs and attorney's fees.

4. The insured will execute and furnish us with any needed documents to secure his and our rights and obligations.

## CONDITIONS

The following conditions apply only to the Uninsured Motorist coverage:

### 1. NOTICE

As soon as possible after an accident, notice must be given us or our authorized agent stating:

(a) the identity of the insured;

(b) the time, place and details of the accident; and

(e) the names and addresses of the injured. and of any witnesses.

If the insured or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

### 2. ASSISTANCE AND COOPERATION OF THE INSURED

After we receive notice of a claim, we may require the insured to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the insured to make that person or organization a defendant in any action against us.

### 3. ACTION AGAINST US

Suit will not lie against us unless the insured or his legal representative have fully complied with all the policy terms.

### 4. PROOF OF CLAIM - MEDICAL REPORTS

As soon as possible, the insured or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable. The insured and other persons making claim must submit to examination under oath by any person named by us when and as often as we may reasonably require. Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the insured's incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

### 5. PAYMENT OF LOSS

Any amount due is payable:

(a) to the insured or his authorized representative:

(b) if the insured is a minor, to his parent or guardian; or

(c) if the insured is deceased, to his surviving spouse; otherwise

(d) to a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with (d) above.


## SECTION IV· UNINSURED MOTORISTS COVERAGE

### DEFINITIONS

Under what the term "uninsured auto" does not include, subparagraph (b) is deleted.

### LOSSES WE PAY

The following sentence is added to the first paragraph:

However, we will not pay damages for: (a) pain; (b) suffering; (c) mental anguish; or (d) inconvenience unless the bodily injury consists in whole or in part of:

(a) Significant and permanent loss of an important bodily function; or

(b) Permanent injury within a reasonable degree of medical probability; Or

(c) Significant and permanent scarring or disfigurement; or -

(d) Death.

The second paragraph is deleted.

### EXCLUSIONS

Exclusion 5 is deleted.


### Uninsured Motorist Coverage (Non-Stacked)
(Florida)

In consideration' of the payment of premium for this coverage and subject to all the terms of the policy. we agree with you as follows:

Section IV. LIMIT OF LIABILITY. is amended by adding the following paragraphs:

5. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations.

6. If at the time of the accident the injured person is occupying an auto insured by us, the amount of coverage available to the injured person is the limit specified in the declarations for the occupied auto.

7. If at the time of the accident the injured person is not occupying a motor vehicle. the injured person is entitled to select anyone limit of anyone auto insured under this coverage.

B. If at the time of the accident the injured person is occupying a motor vehicle which is not owned by him or by a family member residing with him. he is entitled to the highest limits of uninsured motorist coverage afforded for anyone vehicle as to which he is the named insured or insured family member. Such coverage

shall be excess over the coverage on the vehicle he is occupying.
If separate policies with us are in effect for you or any person in your household, they may not be combined to increase the limit of liability for a loss.
THE COMPANY affirms this endorsement

---

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

The Insurance carrier has not paid the policy limits of $100,000.00 in this case which presently clearly warrants payment of the aforementioned policy limits. The facts and circumstances of this violation include; that we have provided documentation to the Insurance carrier for them to become informed that this claim warrants the policy limits payment, and the Insurance carrier has failed to proactively monitor this claim, and if they had they had properly investigated and reviewed this claim the Insurance carrier would know that this claim warrants payment of the policy limits. The Insurance Carrier can cure or remedy the alleged deficiency complained of by simply paying the policy limits of $100,000.00 to the claimant within 60 days from the date of receipt of the civil remedy notice by the insurance carrier, herein. If the insurance company wants to fix their mistake of not paying the policy limits, they can do so by making the payment payable jointly to Nicole J. Collins and Powell & Espat. Deliver the payment to Powell & Espat at 304 Plant Avenue, Tampa, Florida 33606 within 60 days of receipt of the civil remedy notice by the insurance carrier. In so doing, it would be a complete, full and final resolution of any and all claims of Nicole J. Collins known and unknown (and of the consortium claim of including any and all attorney's fees and costs as well as any and all alleged damages for any potential lack of good faith (Bad Faith) claim stemming directly or indirectly from the subject motor vehicle accident. In short, it would be a complete cure or remedy of the deficiency complained of and a complete resolution of the claims described above. This notice is given in order to perfect the rights of Nicole J. Collins who was damaged, to pursue civil remedies authorized by Section 624.155, Florida Statutes.

---

**Comments**

| User Id | Date Added | Comment |
|---------|------------|---------|
|         |            |         |